UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DESHAN WATSON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WASHINGTON DEPARTMENT OF CORRECTIONS, et al.,<br><br>　　　　Defendants. | CASE NO. C17-5968-BHS-TLF<br><br>REPORT AND RECOMMENDATION<br><br>NOTED: November 30, 2018 |

The District Court has referred this 42 U.S.C. § 1983 action to United States Magistrate Judge Theresa L. Fricke. Now the undersigned, having reviewed plaintiff's complaint, the defendants' motion for summary judgment, and all related briefing and the relevant documents, recommends that defendants' motion for summary judgment be granted.[1]

## BACKGROUND

In the Washington State Department of Corrections (DOC) system, prisoners needing special accommodations like a gluten-free diet must obtain a health-status report (HSR) from

---

[1] Although defendants request that the Court grant summary judgment on an equal protection claim, Motion for Summary Judgment, Dkt. 17, p. 13, plaintiff did not bring an equal protection claim. First Amended Complaint, Dkt. 11, pp. 7-11; Plaintiff's Response to Motion for Summary Judgment, Dkt. 24, p. 10.

REPORT AND RECOMMENDATION - 1

prison authorities. Declaration of Scott Light, Dkt. 20, p. 3. HSRs are exceptions to norms and rules. Because prisons maintain safety and security through rules, DOC officials require that HSRs be medically necessary and seek to apply them consistently and equitably across facilities. Light Decl., p. 3.

Defendant Scott Light, Certified Physician Assistant, states that a "gluten-free protocol" directs DOC officials to permit an HSR for a gluten-free diet only when a prisoner has a documented case of celiac disease. Light Decl., p. 4, Exhibit 6. Celiac disease, or gluten-sensitive enteropathy, is an immune reaction to eating gluten, a protein found in wheat, barley, and rye. Light Decl., p. 6. When a person has celiac disease, eating gluten triggers an immune response in their small intestine. *Id.* Over time the reaction damages the lining of the small intestine and prevents absorption of some nutrients. *Id.* Symptoms of this intestinal damages include diarrhea, fatigue, weight loss, bloating, and anemia; serious complications can ensue. *Id.*

Plaintiff has not had a documented case of celiac disease, but DOC officials provided him with a gluten-free diet from April 2011 to October 2014, from November 2014 to November 2015, and from December 2015 to present. Declaration of Deshan Watson, Dkt. 25, Exhibits 2-11. Other DOC inmates who do not have celiac disease have also received HSRs for gluten-free diets. Watson Decl., Exhibits 23, 27.

Plaintiff was prescribed a gluten-free diet for one year, starting April 29, 2011, while incarcerated at Clallam Bay Corrections Center (CBCC). The diet was renewed each year until October 2014. Watson Decl., Exhibits 2-10; Light Decl., p. 3, Exhibit 11. At that time, prison officials declined to renew the HSR after kitchen staff reported seeing plaintiff "'eating all sorts of foods that are not considered on a gluten free diet.'" Light Decl., p. 5, Exhibit 8 (paraphrasing outpatient note).

REPORT AND RECOMMENDATION - 2

1       Before removing plaintiff from the diet, CBCC providers tested him and the results were

2 negative for celiac disease. Declaration of Scott Light, Dkt. 20, p. 3.

3       On November 21, 2014, plaintiff was sent to Forks Community Hospital with nausea,

4 vomiting, "dehydration, hypokalemia (low potassium), and Acute urinary obstruction with acute

5 kidney injury." Light Decl., p. 2, Exhibits 1, 2, 11. In the hospital, plaintiff received a "panel of

6 serology tests" for celiac disease which all produced negative results. Light Decl., pp. 2-3,

7 Exhibit 3. Defendant Light states that plaintiff's symptoms were "much more consistent with a

8 urinary stone . . . than with celiac disease." Light Decl., p. 2.

9       On November 23, 2014, CBCC providers wrote an HSR renewing plaintiff's gluten-free

10 diet for a year. Declaration of Deshan Watson, Dkt. 25, Exhibit 6.

11       Plaintiff was transferred to Stafford Creek Corrections Center (SCCC) in mid-2015. *See*

12 First Amended Complaint, Dkt. 11, p. 5.

13       On November 16, 2015, plaintiff filed a kite requesting that officials renew his gluten-

14 free diet HSR. Light Decl., pp. 3-4, Exhibit 5. In responding to this request, Light reviewed

15 plaintiff's medical chart. Light Decl., pp. 3-4, Exhibits 1, 2, 5, 8, 11. Before Light responded, the

16 gluten-free HSR expired on November 23, 2015. Plaintiff was placed back on the regular prison

17 diet. Watson Decl., Exhibits 6, 16; Declaration of Brent Carney, Dkt. 19, p. 2.

18       On November 25, 2015, Light responded to plaintiff's request. He denied it based on the

19 October 2014 results of celiac-disease testing. Dkt. 20, Light Decl., pp. 3-4, Exhibit 5. Light had

20 not met or examined plaintiff. Light Decl., pp. 3-4.

21       On December 5, 2018, plaintiff wrote to Facility Medical Doctor Sara Smith to appeal

22 Light's decision. The letter informed her of his prior visit to the ER after being taken off a

23

REPORT AND RECOMMENDATION - 3

gluten-free diet. Declaration of Deshan Watson, Dkt. 25, Exhibit 17. Smith received the letter on December 10. *Id.* She did not respond.

Also on December 5, plaintiff filed an "Offender Complaint" grieving Light's refusal to renew the HSR. Watson Decl., Exhibit 18; Declaration of Kerri S. McTarsney, Dkt. 22, 23, Exhibit 2. Defendant McTarsney processed the complaint on December 10 and started investigating December 11. Watson Decl., Exhibit 18, p. 47.

On December 13, 2015, plaintiff experienced upper gastrointestinal bleeding and started vomiting blood. He was taken to Grays Harbor Community Hospital. Declaration of Scott Light, Dkt. 20, p. 4, Exhibits 9, 11. Plaintiff underwent an endoscopy (EGD) with a general surgeon, Dr. Rowe. Light Decl., p. 4, Exhibit 7.

Plaintiff was returned to SCCC on December 16. Light Decl., Exhibit 9, p. 36. He was still on the normal diet. However, Light informed him that he would write a 60-day HSR for a gluten-free diet while Light and plaintiff's other providers discussed plaintiff's health problems. Light Decl., pp. 5-6, Exhibit 9. Light wrote the 60-day HSR the same day. Light Decl., p. 5, Exhibit 9.

Also on December 16, 2015, plaintiff filed a grievance marked "emergency." Watson Decl., Exhibit 29, p. 72. After speaking with the shift lieutenant, defendant McTarsney deemed the complaint "not emergent" and processed it as a normal grievance. *Id.*; McTarsney Decl., p. 5.

Plaintiff received a gluten-free HSR after dinner on December 17. Watson Decl., Exhibit 7, p. 20. Plaintiff alleges that he was "without food from 16 December 2015 until breakfast on 18 December 2015." First Amended Complaint, Dkt. 11, p. 7. Plaintiff has remained on a gluten-free diet HSR since December 18, 2015. Watson Decl., Exhibits 8, 10; Light Decl., pp. 5, 7, Exhibit 11.

In a complaint under 42 U.S.C. § 1983, plaintiff alleged that defendants violated his rights under the Eighth and Fourteenth Amendments by subjecting him to cruel and unusual punishment; violated a duty to keep prisoners in health and safety; violated the Americans with Disabilities Act and Rehabilitation Act; and are liable for medical negligence and ordinary negligence. First Amended Complaint, Dkt. 11, pp. 7-11. The parties have conducted discovery, and defendants now move for summary judgment on each of plaintiff's claims. Motion for Summary Judgment, Dkt. 17.

## STANDARD OF REVIEW

A.  <u>Summary Judgment</u>

Under Rule 56 of the Federal Rules of Civil Procedure (FRCP), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party is required to support their arguments concerning whether a genuine dispute of material fact exists by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FRCP 56(c)(1). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The moving party bears the initial burden of showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden by

presenting evidence that negates an essential element of the nonmoving party's case, or by establishing that the non-movant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party bears the burden at trial, it can meet its initial burden by presenting evidence sufficient to demonstrate that no reasonable trier of fact could find for the nonmoving party; the evidence presented must establish beyond controversy every essential element of the claim. *Southern Cal. Gas. Co. v. City of Santa Ana*, 336 F.3d 885, 888-89 (9th Cir. 2003); *Soremekun v. Thrifty Payless, Inc.*, 509, F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. Material facts are those which might affect the outcome of the suit under governing law. *Id.* A mere scintilla of evidence is insufficient to create a factual dispute. *Id.* at 252. Likewise, the nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

In ruling on a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party, *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, and may not weigh the evidence or make credibility determinations, *Anderson*, 477 U.S. at 255; *see also Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (district court cannot disregard evidence at the summary judgment stage solely based on its self-serving nature, even if it is uncorroborated).

REPORT AND RECOMMENDATION - 6

B.      Section 1983 Standard

To sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

**DISCUSSION**

A.      Defendants Hammond, Taylor, and DOC

Plaintiff "concedes that there is no evidence of the personal participation of Defendants Hammond and Taylor." Plaintiff's Response to Motion for Summary Judgment, Dkt. 24, p. 6. Accordingly, the Court should GRANT defendants' motion to dismiss with prejudice plaintiff's claims against Hammond and Taylor.

With respect to defendant Washington Department of Corrections, plaintiff states that he "does not allege any 42 U.S.C. § 1983 claims against WDOC." Dkt. 24, p. 6. However, in the First Amended Complaint, plaintiff listed DOC in the "Parties" section and as the only defendant to three causes of action. Dkt. 11, pp. 2, 8-10. DOC is not a "person" subject to suit under § 1983 and is immune from § 1983 suits under the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 71 (1989); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). The Court should GRANT defendants' motion to dismiss with prejudice plaintiff's claims against DOC, as well.

B.  **Eighth Amendment Medical Treatment Claims**

Defendants assert that they are entitled to summary judgment on plaintiff's claim of inadequate medical treatment in violation of the Eighth Amendment.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-prong test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (*quoting McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and [ ] harm caused by the indifference." *Id.* at 1096 (*citing McGuckin*, 974 F.2d at 1060).

To meet this deliberate indifference standard, defendants must have known of and disregarded an excessive risk to the plaintiff's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A difference of opinion about treatment between plaintiff and prison medical authorities "does not give rise to a § 1983 claim," but it does not preclude one, either. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981); *Hamby v. Hammond*, 821 F.3d 1085, 1097 (9th Cir. 2016) (Gould, J., concurring in part and dissenting in part).

The medical need must be serious in the constitutional sense, and the indifference to medical needs must be substantial. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton

REPORT AND RECOMMENDATION - 8

infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) ("Either result is not the type of 'routine discomfort [that] is 'part of the penalty that criminal offenders pay for their offenses against society.'") (quoting *Gamble*, 429 U.S. at 104; *Hudson*, 503 U.S. at 9); *see also Brock*, 315 F.3d at 163 ("'[W]e have long held that 'the Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain.'" [quoting *Todaro v. Ward*, 565 F.2d 48, 52 (2nd Cir. 1977)]).

An inmate, therefore, is not required "to demonstrate that he or she experiences pain that is at the limit of human ability to bear," nor does the inmate have to show "that his or her condition will degenerate into a life-threatening one." *Brock*, 315 F.3d at 163. "[A] 'serious' need for medical treatment" may be present where there is:

> [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin*, 974 F.2d at 1059-60.

### 1. Serious Medical Need

Plaintiff contends that defendants were deliberately indifferent to his need for a gluten-free diet, this need already existed, and defendants were aware of it when they declined to renew the gluten-free diet until after plaintiff's emergency. Plaintiff's Response to Motion for Summary Judgment, Dkt. 24, p. 8. Plaintiff contends that his "[m]edical condition requires a gluten-free diet, and failing to provide that diet could—and here, did—result in further significant injury and the unnecessary and wanton infliction of pain." Dkt. 24, p. 8.

1  Defendants assert that because testing indicated that plaintiff did not have celiac disease,
2  plaintiff did not have a serious medical need when he requested a gluten-free diet before the
3  December 2015 emergency. Motion for Summary Judgment, Dkt. 17, pp. 10-11; *see* First
4  Amended Complaint, Dkt. 11, pp. 5-6.

5  Plaintiff has presented the following evidence that he has a serious medical need:

1. Plaintiff received a gluten-free diet from April 2011 to November 2014. Declaration of Deshan Watson, Dkt. 25, Exhibits 2-6.
2. Two weeks after he was removed from that diet, he was seen at an emergency room "for dehydration, hypokalemia (low potassium, and Acute urinary obstruction with acute kidney injury." Declaration of Scott Light, Dkt. 20, p. 2, Exhibit 1; Watson Decl., Exhibits 12-15.
3. Prison authorities found it appropriate to place him back on a gluten-free diet. Watson Decl., Exhibit 6.
4. In December 2015, three weeks after he was again removed from a gluten-free diet, he suffered a gastrointestinal emergency. Light Decl., p. 4.
5. Prison authorities again found it appropriate to place him on a gluten-free die in December 2015. Light Decl., p. 5.
6. He has not experienced a similar emergency since December 2015. Light Decl., p. 7.

At least one federal circuit court of appeals has held that a plaintiff can show a "serious medical need" using evidence of both "the prisoner's symptoms at the time of the prison employee's actions" and the later "alleged harm to the prisoner." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005).

Assuming, for purposes of analysis, that plaintiff's evidence is sufficient to create a genuine issue of material fact regarding whether plaintiff has an inability to digest gluten (even if the condition was not diagnosed as celiac disease) and whether he had a serious medical need under the first prong, defendants are nonetheless entitled to summary judgment based on the

REPORT AND RECOMMENDATION - 10

plaintiff's failure to raise a genuine issue of material fact regarding the deliberate indifference standard.

    2.    <u>Deliberate Indifference</u>

Plaintiff has not shown a genuine issue of material fact as to whether defendants Light and Smith were deliberately indifferent to plaintiff's serious medical need.

Defendants present evidence showing that, at the time of the alleged acts and omissions, defendant Light was not subjectively aware that plaintiff had adverse reactions to gluten. Although, in November 2014, plaintiff went to the emergency room two weeks after being removed from a previous gluten-free diet, the symptoms plaintiff displayed at that visit did not indicate gluten intolerance.

Rather, they were "more consistent with a urinary stone." Declaration of Scott Light, Dkt. 20, p. 2, Exhibit 1. Plaintiff's primary symptom, vomiting, is "not a typical reaction to gluten sensitivity." Light Decl., p. 2, Exhibit 2. Although a treating physician noted a "[q]uestion of gluten intolerance" in plaintiff's discharge summary, the physician recommended a gluten-free diet only "until the results of celiac-related lab tests are back." Light Decl., Exhibit 2. When those tests returned, they indicated that plaintiff does not have celiac disease. Light Decl., pp. 2-3, Exhibit 3.

In responding to plaintiff's November 16, 2015, request, Light reviewed plaintiff's medical chart, including his October 2014 test results. He wrote that "[t]he test that was done at CBCC in OCT 2014 was negative." Light Decl., p. 5, Exhibits 5, 8.

This evidence indicates that defendant Light believed plaintiff's symptoms in November 2014 were unrelated to an inability to process gluten—whether due to celiac or a different condition. This, in turn, shows there is no genuine dispute of material fact that Light did not

REPORT AND RECOMMENDATION - 11

1    "draw the inference" that removing plaintiff from the gluten-free diet would place plaintiff at

2    risk. Dkt. 20, Light Decl., pp. 2-3, Exhibits 1, 3; *see Farmer*, 511 U.S. at 837.

3          Plaintiff has not shown a genuine dispute regarding Light's state of mind. He relies only

4    on the timing of his first medical emergency, in November 2014, and of his subsequent

5    emergency in December 2015 to show that Light must have known that plaintiff could not safely

6    process gluten. Plaintiff's Response to Motion for Summary Judgment, Dkt. 24, pp. 8-9. That

7    evidence is not sufficient to present a genuine dispute: The December 13, 2015, emergency is not

8    relevant to Light's state of mind before that date. And Light has presented evidence that he

9    reasonably believed, based on plaintiff's medical records and Light's own medical knowledge

10   and training, that the prior emergency was not a reaction to eating gluten.

11         With respect to defendant Dr. Sara Smith, plaintiff alleges that on December 10, 2015,

12   Dr. Smith received his December 5 letter complaining of Light's refusal to renew his HSR, and

13   that Dr. Smith did not act on it. First Amended Complaint, Dkt. 11, pp. 5-6. A prison official acts

14   with "deliberate indifference" if "the official acted or failed to act despite his *knowledge of a*

15   *substantial risk of serious harm*." *Farmer*, 511 U.S. at 842 (emphasis added).

16         Plaintiff argues that defendants Smith and Light could not rely on a "gluten-free

17   protocol" as a reason to refuse plaintiff's request to renew a gluten-free HSR. That protocol

18   purports to require a diagnosis of celiac disease before approving a gluten-free diet. Declaration

19   of Scott Light, Dkt. 20, Exhibit 6.

20         But plaintiff has presented evidence that the gluten-free protocol did not mandate that

21   defendants remove him from a gluten-free diet, because (1) plaintiff had been on a gluten-free

22   diet without proof of celiac disease since 2011, and he has currently been on a gluten-free diet

23   since December 2015, and (2) DOC providers, including at SCCC, have ordered gluten-free diets

for at least two prisoners without documented celiac disease. Dkt. 24, p. 29; *see* Declaration of Deshan Watson, Dkt. 25, Exhibits 2-6, 23-28.

Nonetheless, the evidence at summary judgment does not raise a genuine issue of material fact regarding whether Dr. Smith knew of a substantial risk of harm to plaintiff if she failed to renew his gluten-free diet. Medical information available to Dr. Smith was the same as that available to Mr. Light: medical records from plaintiff's November 2014 medical emergency. As noted above, those records did not show that plaintiff's emergency was a reaction to eating gluten. Plaintiff does not produce any evidence that Smith was subjectively aware of a substantial risk to his health.

Thus, plaintiff has not successfully rebutted defendants' initial showing by presenting sufficient evidence to create a genuine issue of material fact as to both prongs of a deliberate indifference claim. *See Celotex*, 477 U.S. at 325. Accordingly, the Court should GRANT the summary judgment motion as to plaintiff's Eighth Amendment claims against Light and Smith.

C.  Qualified Immunity

Defendants assert that even if plaintiff has presented evidence sufficient to survive a summary judgment motion on his section 1983 claims, qualified immunity nonetheless protects them from liability for damages.

Qualified immunity requires an assessment of whether the official's conduct violated "'clearly established constitutional or statutory rights of which a reasonable person would have known.'" *Kisela v. Hughes,* —— U.S. ——, 138 S. Ct. 1148, 1152 (2018) (*per curiam*) (quoting *White v. Pauly*, 580 U.S. ——, 137 S.Ct. 548, 551 (2017)). Qualified immunity is an affirmative defense to damages liability and does not bar actions for declaratory or injunctive relief. *American Fire, Theft & Collision Managers, Inc. v. Gillespie,* 932 F.2d 816, 818 (9th Cir. 1991).

The Court must decide the qualified immunity issue at the summary judgment stage when the issue turns on questions of law. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). The Court can analyze the two prongs of qualified immunity in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In considering the first prong, the Court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

As discussed above, viewed in the light most favorable to plaintiff, the facts do not show that defendants' acts violated plaintiff's Eighth Amendment rights. Accordingly, defendants are entitled to qualified immunity because the first prong of the qualified immunity test is not satisfied.

D. <u>Claims under Americans with Disabilities Act and Rehabilitation Act</u>

Plaintiff also alleges violations of the Americans with Disabilities Act (ADA) and Rehabilitation Act. But plaintiff named only the DOC as a defendant to these claims. First Amended Complaint, Dkt. 11, pp. 8-10. As discussed above, DOC should be dismissed as a defendant. Accordingly, the Court should likewise GRANT defendants' motion to dismiss plaintiff's claims under the ADA and Rehabilitation Act.

E. <u>State Tort Claims</u>

In addition to his federal claims under § 1983, plaintiff brought medical negligence claims against defendants Smith and Light and a negligence claim against defendant McTarsney. Dkt. 11, pp. 10-11.

1. <u>Medical Negligence Claim against Light and Smith</u>

*Subject-Matter Jurisdiction*

This Court has supplemental subject-matter jurisdiction over plaintiff's state-law medical negligence claim because it is part of the "same case or controversy" as plaintiff's federal section 1983 claims. See 28 U.S.C. § 1367(a). However, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720, (1988); *see* 28 U.S.C. § 1367(c). As discussed above, the Court should dismiss plaintiff's claim of deliberate indifference under the Eighth Amendment. Accordingly, the Court should decline to exercise jurisdiction over the related state-law claims.

*Merits of Medical-Negligence Claim*

If the Court reaches the merits of plaintiff's medical-negligence claim, it should nonetheless grant defendants' motion for summary judgment.

A claim of medical negligence under Washington law requires the plaintiff to prove two elements: 1) defendant "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider" in defendant's position, and 2) that failure proximately caused plaintiff's injury. RCW § 7.70.040; *Keck v. Collins*, 184 Wn.2d 358, 371 (2015).

"[T]o defeat summary judgment in almost all medical negligence cases, the plaintiffs must produce competent medical expert testimony establishing that the injury was proximately caused by a failure to comply with the applicable standard of care." *Seybold v. Neu*, 105 Wn. App. 666, 676 (2001). An expert must testify about "what a reasonable doctor would or would not have done, that the [d]octor[ ] failed to act in that manner, and that this failure caused her

injuries." *Keck*, 184 Wn.2d at 371. Nonetheless, expert testimony is not necessary if the medical facts are observable to the lay person. *Bauer v. White*, 95 Wn. App. 663, 667 (1999).

First, plaintiff contends that defendants' summary-judgment arguments rely on rules governing medical malpractice claims, whereas he is bringing a medical negligence claim. Plaintiff's Response to Motion for Summary Judgment, Dkt. 24, p. 15. Plaintiff asserts that defendants' arguments are therefore inapposite. *Id.* He asserts that defendants waived their argument about medical negligence by not arguing it in their summary judgment motion.

Plaintiff is incorrect. Washington's statute, RCW 7.70, governs "the substantive aspects of all causes of action, regardless of their characterization, for damages for 'injury occurring as a result of health care.'" *Branom v. State*, 94 Wn. App. 964, 968-69 (1999) (quoting RCW 7.70.010). Whether plaintiff characterizes his claims as one of medical malpractice or medical negligence, his cause of action is under RCW 7.70.030(1), while RCW 7.70.040 describes the "[n]ecessary elements of proof" for such a claim. *See id.*

Second, defendants assert that, whether plaintiff's claims are designated as medical negligence or medical malpractice, plaintiff's burden at summary judgment required him to present testimony from a medical expert, and that plaintiff has not done so. Motion for Summary Judgment, Dkt. 17; p. 17; Defendants' Reply Brief, Dkt. 26, p. 5. Thus, defendants assert, plaintiff did not fulfill his burden to show a genuine issue of material fact as to the element of breach. Dkt. 17, p. 17; RCW 7.70.040(1) (plaintiff must show that defendant "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider" in defendant's circumstances).

Plaintiff responds that expert testimony is not required to support a medical negligence claim, and that he has shown sufficient evidence to survive summary judgment. He cites the

REPORT AND RECOMMENDATION - 16

Supreme Court of Washington's statement that, "[a]s a general proposition, expert testimony is not required to establish a standard of care in an action for negligence. . . . Only in a professional malpractice action must a plaintiff introduce expert testimony to establish the standard of care by which the defendant's conduct must be measured." *Peterson v. State*, 100 Wn. 2d 421, 437 (1983) (emphasis added) (citations omitted).

Plaintiff is incorrect; as noted above, plaintiff's characterization of his claim as medical negligence, rather than malpractice, does not change his burden. *See Branom*, 94 Wn. App. at 968-69. In the case that plaintiff cites, the Supreme Court of Washington contrasted medical malpractice claims with ordinary negligence claims, not medical negligence claims. *See Peterson*, 100 Wn. 2d at 437. The latter are equivalent to medical malpractice claims in their proof requirements. *Branom*, 94 Wn. App. at 968-69; RCW 7.70.030, 7.70.040.

Plaintiff does not contend that this is a rare case in which expert testimony is unnecessary to establish the standard of care because the medical facts are observable to the lay person. *See Guile v. Ballard Community Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993). Whether plaintiff's prior medical emergency meant that the standard of care required a gluten-free diet is not a matter observable to a lay person. And plaintiff has not provided competent medical evidence sufficient to support a claim for medical negligence.

Accordingly, the Court should GRANT defendants' motion for summary judgment as to plaintiff's medical negligence claim.

2. <u>Negligence Claim against Defendant McTarsney</u>

With respect to plaintiff's negligence claim against defendant McTarsney for her failure to timely respond to plaintiff's December 5, 2015, grievance, defendants first contend that this

Court lacks subject-matter jurisdiction as to defendant McTarsney. They also contend that plaintiff's state negligence claim against McTarsney would, in any case, fail on the merits.

*Subject-Matter Jurisdiction*

Subject-matter jurisdiction cannot be waived, and the Court has an independent obligation to address it at any point in the litigation. FRCP 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Where a plaintiff brings a state law claim against one defendant and a federal claim against another defendant, the Court may exercise supplemental jurisdiction over the state-law defendant so long as the state and federal claims arise from a common nucleus of facts. *See Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1173-75 (9th Cir. 2002). "In practice, § 1367(a) requires only that the jurisdiction-invoking claim and the supplemental claim have some loose factual connection." 13D Wright & Miller, Federal Practice and Procedure § 3567.1 (3d ed. 2008). This Court's decision to exercise supplemental subject matter jurisdiction involving a party over whom there is no independent basis for federal court jurisdiction is discretionary. *Mendoza*, 301 F.3d at 1174; *see* 28 U.S.C. § 1367.

Here, defendants are correct that plaintiff did not allege any federal claims against McTarsney. Nonetheless, the medical-negligence claim against McTarsney shares a common nucleus of operative fact with the Eighth Amendment claim against Light and Smith, in that both claims arise out of defendants' responses to plaintiff's alleged serious medical need in November and December 2015. *See* Declaration of Kerri S. McTarsney, Dkt. 22, 23, p. 5. But because, as discussed above, the Court should dismiss the federal claims, the Court should decline to exercise jurisdiction over the state-law claim against McTarsney. § 1367(a); *Mendoza*, 301 F.3d at 1174.

*Merits of Negligence Claim*

If the Court reaches the merits of plaintiff's negligence claim against McTarsney, it should determine that dismissal is warranted.

Defendants' briefing discusses the negligence claim only with respect to McTarsney's conduct in investigating the grievance plaintiff filed on December 17, 2015, after plaintiff had returned from the hospital. Motion for Summary Judgment, Dkt. 17, pp. 5-6 (contending that plaintiff has not shown breach of duty because McTarsney met deadlines for processing grievances).

Plaintiff responds that this is not the conduct about which he is suing McTarsney. Plaintiff's Response to Motion for Summary Judgment, Dkt. 24, pp. 16-17. He asserts that, instead, McTarsney breached a duty to him in failing to timely investigate and respond to plaintiff's *December 5* grievance. The breach he alleges is that McTarsney waited six days to begin an investigation, and did not interview plaintiff for 16 days. First Amended Complaint, Dkt. 11, pp. 6, 11; Dkt. 24, pp. 16-18.

McTarsney's declaration indicates that she complied with the DOC's timeframe for responding to routine grievances in responding to plaintiff's December 5 letter. Declaration of Kerri S. McTarsney, Dkt. 22, 23, pp. 3-4. Plaintiff's grievance was marked as routine, or "initial," rather than "emergency." Declaration of Deshan Watson, Dkt. 25, Exhibit 18. Plaintiff has not shown that McTarsney breached a duty to him in responding to that grievance. Accordingly, the Court should dismiss the negligence claim against McTarsney if it reaches its merits.

**CONCLUSION**

The Court should GRANT defendants' motion for summary judgment, Dkt. 17, and dismiss each of plaintiff's claims with prejudice.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **November 30, 2018**, as noted in the caption.

Dated this 15th day of November, 2018.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20